UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | CAUSE NO. A-14-CR-022(1)LY |
| § | |
| RICHARD SOFINOWSKI § | |

## MOTION TO SUPPRESS EVIDENCE AND INCORPORATED MEMORANDUM

COMES NOW the Defendant, RICHARD SOFINOWSKI, by and through his attorney of record, IRA L. DAVIS, pursuant to Rules 12 and 41 F.R.Cr.P., and under the 4th Amendment of the U. S. Constitution, moves this Court to suppress all evidence seized by agents of a DEA Task Force pursuant to the arrest and search of Defendant on or about November 13th, 2013, and all fruits derived from said arrest and search including but not limited to any statements made by Defendant Richard Sofinowski.

I.

The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

"Probable cause" only exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a reasonable person in the belief that an offense has been or is being committed. *See Brinegar v. United States*, 338 U.S. 160, 175 (1949). This long-established standard allows a neutral magistrate to make an independent evaluation of the matter and "seek[s] to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." *Id.*

In deciding whether to exclude evidence obtained as a result of a search warrant, the court must first determine (1) whether the officer in good-faith relied on the facts in the search warrant in carrying out the search, and (2) whether the warrant was supported by probable cause. *United States v. Lopez*, 68 F.3d 468 (5th Cir. 1995) (internal citations omitted). The good-faith exception does not apply under the following circumstances:

> (1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*United States v. Webster*, 960 F.2d 1301, 1307 n. 4 (5th Cir. 1992).

An affidavit which is "so lacking in indicia of probable cause," is often referred to as a "bare bones" affidavit. *United States v. Satterwhite,* 980 F.2d 317, 320-321 (5th Cir. 1992). These affidavits rely on wholly conclusory statements, which lack the facts and circumstances that permit a magistrate to independently determine probable cause. *Id.* at 321.

II.

On November 13th, 2013, Detective James Scott, Drug Enforcement Agency, obtained a search warrant, No. A-13-M-628, to search the premises at 14532 Wharton Park Trail, Austin, Williamson County, Texas. The warrant granted authority to enter the premises at that address and search for the items set out in an "Attachment B (<u>Description of Items to be Searched for and Seized</u>)" appended to the Affidavit set out in the Application for a Search Warrant The search warrant did not grant authority to arrest any person. The affidavit in support of the warrant stated the affiant's belief that the premises

were used by and under the control of Richard Sofinwoski, M.D. At base the issue in the evaluation of any warrant is whether the averments set out in the affidavit support the idea that there is reasonable cause to believe that evidence of a crime or evidence relevant to the commission of crime will be found at the place to be searched. The averments should be evaluated in these terms with a focus on the crime specifically being investigated.

III.

Section II of the Affidavit, titled Introduction sets out in paragraph 1 of the affidavit a description of the Affiant's experience as a law enforcement agent and his current job assignment with the Organized Crime Division, Major Narcotics Unit assigned to the Tactical Diversion Squad of the Drug Enforcement Agency, Houston Division, Austin Resident Office. It also sets out a general description of his duties and participation in the investigation of drug related offenses. It does not refer to any specific knowledge or detail any examples of the knowledge and experience he has obtained. Paragraph 2 of the affidavit (contained in Section II. Introduction) sets out ten (10) conclusory statements about what actions drug traffickers and others involved in illegal drug transactions may take which the Affiant asserts he knows from his training, experience and participation in this investigation. In this Introduction the Affiant sets out no specific examples or refers to no facts he has learned in this investigation to support a conclusion that the Defendant has done any of the things set out in the conclusory statements referred to above. The Introduction to the Affidavit makes no effort to relate any of the things drug traffickers may do to any facts suggesting the Defendant has done any of these things.

Although the statements set out in the Introduction, paragraph 2, may establish the breadth of the Affiant's knowledge of drug traffickers and persons involved in illegal drug transactions it does not offer a factual or reasonable basis for believing the Defendant was

doing any of the things set out or involved in illegal drug activities discussed.

IV.

Section III of the Affidavit is an overview of the investigation. It sets out in its first paragraph (paragraph 3 in the affidavit) two anonymous tips which appear to be the start of the investigation of Dr.Sofinowski. One tip generated on February 17, 2013 claims that Dr. Sofinowski is administering illegal prescriptions and keeping illicit drugs in his residence at 14532 Wharton Park Trail, Austin Texas. The tip is anonymous and provides no basis for how the tipster knows what he/she claims about Dr. Sofinowski. The only factual information provided by the tip is of the public sort anyone could know. A second call, undated, claims Dr.Sofinowski is addicted to methamphetamine and possibly suicidal, but also gives no idea of how the caller may have gained the information. It provides no facts which might help substantiate the claim made. The two tips do not corroborate each other. One might try to argue that the addiction claim lends some substance to the idea the Dr. has illicit drugs in his home. However, the knowledge, even if true, that someone is addicted is insufficient to create probable cause to believe they have drugs in their home on the day the information was given and certainly no cause to believe you will find illegal drugs there nearly nine months later. Neither of the tips contains information which could properly be used to support a probable cause basis for the search the Affiant seeks approval for. *See Illinois v. Gates*, 462 U.S. 213 (1983), *United States v. Kolodziej*, 712 F.2d 975 (5th Cir. 1983) discussed below.

The next paragraph in this section (paragraph 4 of the affidavit) asserts that Dr. Sofinowski is a licensed psychiatrist, has an active DEA number, that employment records indicate he does not have a psychiatric practice listed in his name, is not affiliated with any medical facility, that he is actively prescribing controlled substances from his residence,

and has renewed his DEA license to reflect his home as his place of business. Other than saying merely that research confirms these statements, the Affiant gives no information or facts which would support these conclusions or which would permit the reader of the affidavit to determine how he arrived at the conclusions to permit an independent assessment of their reliability. Without the substance of how he arrived at these beliefs they are merely conclusory statements.

Paragraph 5 of the Affidavit, in Section II, sets out several conclusory statements claiming the prescriptions Dr. Sofinowski is writing are incongruent with the profession of psychiatric medicine and in amounts which are questionable for any type of practitioner. However, the Affiant does not offer a factual basis for why he believes this to be true nor any reason to believe he has any knowledge of proper psychiatric practice or any other area of medical practice which might provide him a basis for drawing such conclusions. Additionally, the affiant tells us that Dr. Sofinowski has been writing prescriptions for 32 persons since 2011 and that a great many of those persons have a history in the use and sale of methamphetamine, but offers no reason why information is relevant to a reasonable conclusion that the Doctor is violating the law and that evidence of the violation may be found at his residence. These are bare conclusions lacking any facts from which a magistrate could independently determine probable cause. *See United States v. Satterwhite,* 980 F.2d 317, 321 (5th Cir. 1992).

Paragraph 6 states that everything said prior to the Sections and paragraphs which follow paragraph 6, is not relevant to the basis for the search warrant excepting his statements about his experience and training. It instructs the reader to look to the following paragraphs and his experience and training for the information to support the request for the search warrant.

V.

Section IV summarizes the information gathered from Cooperating Sources which the Affiant deems relevant to establishing a basis for the issuance of the warrant he seeks. Paragraph 7 through paragraph 11 sets out the information gleaned from four Cooperating Sources.

Only two of the Cooperating witnesses have ever met Dr. Sofinowski. Both of them indicate they met him only once. Neither of them indicate that she had any discussion at all with the doctor regarding the writing of prescriptions nor that they were ever in his home. All of the information they offer regarding Dr. Sofinowski is information they claimed to have received from Dr. Sofinowski's indicted co-Defendant Arza Demi. All of the Cooperating Sources who filled prescriptions were recruited by Azra Demi and had all of their dealings with Asra Demi. None of them indicated any direct dealings with Dr. Sofinowski regarding prescriptions, controlled substances or any illegal activities. Any information they provided regarding how and why prescriptions written and who wrote the prescriptions is not firsthand knowledge they themselves had gained, but rather hearsay from Asra Demi about Dr. Sofinowski. All of the information provided by the Cooperating Sources and included in the affidavit regarding Dr. Sofinowski's participation in any illegal activity is hearsay within hearsay. In reality, the information provided in this section of the Affidavit has only one source – Azra Demi. Further, none of the Cooperating sources indicate that Dr. Sofinowski ever did anything to confirm or admit to undertaking any of the actions they say the co-Defendant Arza Demi attributed to him. Additionally, all of the Cooperating Sources had concurrent ongoing legal difficulties of their own at the time they became Cooperating Sources undermining their credibility and reliability as sources of information. Richard Graham, number three of the Cooperating Sources, offers himself as

a source of information under the sponsorship of Erin Neely, (CS) number two. The affidavit leaves unaddressed the clear possibility of the two of them colluding in providing information used in the Affidavit. The Affiant never affirms or sets out any information which might establish the reliability or credibility of the Cooperating Sources. One of the Cooperating Sources, the fourth one listed in the affidavit, Teryn Scaff, provides no information related to Dr. Sofinowski whatsoever. All of Scaff's first hand information relates to Azra Demi's activities.

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court held that courts should review an informant's tip under the "totality of the circumstances" to determine whether it establishes or contributes to probable cause. *Id.* at 230. However, *Gates* did not dispense with the requirement that an officer provide facts showing the informant's credibility, reliability, and basis of knowledge. *Id.* The Court recognized that while these factors should not be separately and rigidly applied in every case, they were still "highly relevant" to the value of an informant's report. *Id.*

The Court in *Gates* further emphasized that a magistrate's actions "cannot be a mere ratification of the bare conclusions of others," and that courts must "continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* at 239.

When an officer relies on double hearsay or hearsay within hearsay (i.e., hearsay from an informant), the court must determine whether a "substantial basis exists for crediting the second individual's information" in addition to crediting the informant. *United States v. Satterwhite*, 980 F.2d 317, 322 (5th Cir. 1992).

In *United States v. Kolodziej*, 712 F.2d 975 (5th Cir. 1983), the Fifth Circuit held that there was no probable cause where several informants, who were all arrested for federal

drug charges, stated that the defendant was their supplier, that they had paid defendant large sums of money for drugs, and that defendant kept the proceeds from the drug transactions in his vehicle and a safety deposit box. *Id.* at 977.

Applying the "totality of the circumstances" analysis under *Gates*, the court held that these statements were "nothing more than a conclusion that the defendant had engaged in, and was engaging in criminal conduct." *Id.* In particular, the court pointed out that the affidavit contained no basis for the informants' knowledge of the defendant's involvement in criminal activity or where he kept the contraband or proceeds from illegal activity. *Id.* The court continued that there were no facts to show the informants' assertions were credible or reliable, and in fact could be deemed less reliable given the informants' criminal liability and likely desire to curry favor with law enforcment. *Id.* at 977-978.

The veracity and reliability of criminal informants was addressed again in *United States v. Jackson*, 818 F.2d 345 (5th Cir. 1987). The informant in that case did not witness any crime and was an "admitted perpetrator of the crime in question." *Id.* at 348. The court noted that the informant "had reason to shade any information he gave in order to exculpate himself or to curry favor with officials. *Id.* at 349.

The informant in Jackson was able to state that the defendant knew about the stolen property that was the subject of the criminal charges and exercised control over that property. *Id.* The informant was also able to provide a particularized description of the stolen property. *Id.*

However, the court noted that the informant did not state how the defendant knew of the burglary or how the informant and defendant knew each other in a way that would allow the court to infer that the defendant likely knew about the burglary. *Id.* Likewise, the informant's detailed description of the property did not provide facts regarding the

defendant's knowledge of the crime. *Id.* at 350. Taken in total, the court held that the affidavit was "bare bones" and incapable of supporting a finding of probable cause. Id.

The reliability issue with criminal informants was raised again in *Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990). In that case the court held that reliability should be proven in cases where a purported eye-witness had a motivation to lie, noting that the main informant was being prosecuted for his involvement in the alleged crime and had "ample" motive to lie. *Id.* at 399. The court only found probable cause existed because of the strong basis of knowledge presumed from an eyewitness account and corroborating information included in the affidavit. *Id.* at 399-400

VI.

Section V of the Affidavit titled Information from Survillance sets out two conclusory statements related to surveillance conducted at the residence at 14532 Wharton Park Trail, Austin, Texas. The first of which says that the number of persons visiting the residence corroborates that not enough people come there to justify the number of prescriptions written by Dr. Sofinowski, but neither explains why or sets out any observed facts to support the conclusion. The second merely conclusory statement asserts that the surveillance confirms the Doctor not leaving the residence to keep any other business hours elsewhere. It does not relate this conclusion to any reason to believe the items to be searched for at the residence will be there or provide evidence of illegal drug activities.

VII.

Section VI of the Affidavit titled Information from Bank records contains selective information concerning Defendant's bank account. The information may have some relationship to the character and extent of Dr.Sofinowski's medical practice but it offers no information relevant to any reason to believe the Defendant is engaged in illegal drug

activities or that evidence of such activity will be found in his home.

VIII.

Section VII of the Affidavit titled Information from Prescription Records consists of two paragraphs. The first sets out information supporting the idea that three of the cooperating witnesses received prescriptions for Schedule II and III controlled substances; it specifically does not corroborate the idea that the prescriptions were illegally obtained or written in violation of any law.

The second paragraph indicates information relevant to the idea that Azra Demi possibly being involved in obtaining prescriptions by fraud but it contributes nothing to the idea that the Defendant Dr. Sofinowski is writing illegal prescriptions. At most it indicates he may be the source of the prescriptions.

IX.

Section VIII discusses Information from Trash Removals (trash runs). The section sets out the summary details of four trash runs on April 13, 2013, October 9, 2013, October 16, 2013, and November 6, 2013.

The April 13 trash run provides information verifying that Dr. Sofinowski probably lives at 14532 Wharton Park Trail because it contains trash with the Doctor's name on it. It contains two prescription forms with the Doctor's information on them and some pharmacy packaging from filled prescriptions written by Dr. Sofinowski. None of the items are suggestive of illegal activity nor do they suggest that you will find evidence of illegal activity within the house at 14532.

The trash runs of October 9, October 16 and November 6 contain some plastic baggies with some evidence of the presence of amphetamine. Amphetamine is not per se illegal to possess. It is found in numerous prescriptions written for persons with a variety of

mental health issues. Dr. Sofinowski is a psychiatrist and psychiatrists treat people with mental health issues. None of the allegations set out in the Affidavit discuss any illegal activity involving amphetamine. The only illegal drug mentioned earlier in the affidavit is methamphetamine. Amphetamine is not methamphetamine. The only medications mentioned earlier are Oxycontin and Hydrocodone. The finding of possible amphetamine does not corroborate or substantiate any of the previous claims about illegal prescriptions or methamphetamine use. The November 6, trash run does include a glass pipe with light burn residue that tested positive for amphetamine. This item alone does not support a finding of probable cause to search the Doctor's home for evidence of a large scale prescription fraud scheme involving the trading of prescriptions for methamphetamine nor does it support the idea that one could reasonably expect to find the items and evidence sought and to be searched for which are set out in Attachment B.

Additionally, the Affiant does not indicate the size of the plastic baggies. Plastic baggies come in various shapes and sizes, colors and frequently have markings. Affiant relates nothing about the baggies suggestive of how much they might hold or whether there is any indication that they were used to package or transport illegal controlled substances. Without more the plastic bags fail to establish probable cause to believe a violation of 21 U.S.C. 841(a) is being committed and evidence of same will be found in Dr. Sofinowski's residence.

X.

During and after the execution of the search warrant, the Defendant was questioned about his prescription writing activities, his patient relationships with various people, and his interactions with and relationship to Azra Demi. Any statements or admissions the Defendant may have made were not voluntary, but rather are the product of the illegal and

unconstitutional search of him and his home, and illegal seizure of his person and items from his home. *Wong Sun v. United States*, 445 U.S.471, 487-88 (1963) and *United States v. Crews*, 445U.S. 463, 470 (1980).

WHEREFORE, premises considered, Defendant moves this Court to suppress all evidence and the fruits thereof, including any and all evidence seized from his home and any statements he may have made, that resulted from the illegal search of the premises at 14532 Wharton Park Trail, Austin, Texas on November 13th, 2013.

Respectfully submitted,

DAVID REYNOLDS
State Bar No. 16796500
1012 Rio Grande St.
Austin, Texas 78701
512-472-1963 - FAX 512 472-4102
ATTORNEY FOR DEFENDANT

IRA L. DAVIS
State Bar No. 05497700
1012 Rio Grande Street
Austin, Texas  78701
512-472-9154 - Fax 472-4102
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify by my signature above that on this 16th day of April, 2014, a true and correct copy of the foregoing motion was delivered to the office of the Assistant United States Attorney, 816 Congress Ave., Suite 1000, Austin, Texas 78701.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § § | CAUSE NO. A-14-CR-022(1)LY |
| RICHARD SOFINOWSKI | § | |

## ORDER OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

On this day came on for consideration the motion of Defendant RICHARD SOFINOWSKI to suppress all evidence, and fruits thereof, derived from the search of the premises of 14532 Wharton Park Trail, Austin, Texas on November 13th, 2013. Having heard evidence and argument on same, it is the opinion of the Court that said motion should be and it is hereby **[GRANTED]** **[DENIED]**.

SIGNED this _____ day of _____, 20___.


_____
JUDGE PRESIDING